```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
BAYERISCHE LANDESBANK,                  :
                                        :     11 Civ. 673 (DLC)
                    Plaintiff,          :
                                        :
           -v-                          :     OPINION AND ORDER
                                        :
ALADDIN CAPITAL MANAGEMENT LLC,         :
                                        :
                    Defendant.          :
                                        :
----------------------------------------X
```

Appearances:

For plaintiff:

David Spears
Jason Mogel
Laurie F. Richardson
Spears & Imes LLP
51 Madison Avenue
New York, NY 10010

For defendant:

Jason M. Halper
Lambrina Mathews
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

DENISE COTE, District Judge:

By motion dated December 4, 2012, plaintiff Bayerische Landesbank ("Bayerische") seeks leave to file a second amended complaint adding Aladdin Capital Holdings LLC ("ACH") as a defendant in this action with respect to its gross negligence claim ("Second Amended Complaint"), with relation back under Rule

15(c)(1)(C), Fed. R. Civ. P., to the date plaintiff filed its original complaint.  Defendant Aladdin Capital Management LLC ("ACM") opposes the motion to amend on the ground that amendment would be futile.  For the following reasons, the motion to amend is granted.

Background

This dispute arises out of investment losses incurred by the plaintiff as a result of its decision in December 2006 to participate in a collateralized debt obligation known as Aladdin Synthetic CDO II (the "CDO").  Familiarity with the facts and procedural history of this action is presumed.  Accordingly, only those facts necessary to the resolution of plaintiff's present motion will be recited here.

Plaintiff commenced this action against ACM on January 31, 2011, and filed an amended complaint on April 28, 2011 ("First Amended Complaint").  The original and First Amended complaints each assert two claims against ACM: (1) breach of contract, alleging that ACM breached its obligations under the Portfolio Management Agreement ("PMA") governing the CDO,[1] and (2) gross

---

[1] The PMA contains several relevant terms.  It defines the "Portfolio Manager" as "Aladdin Capital Management LLC . . . together with its successors and assigns in such capacity."  It also obliges the Portfolio Manager inter alia "to perform its obligations . . . in good faith using a degree of skill, care, diligence and attention consistent with the practice and procedures followed by reasonable and prudent institutional managers . . . ."

negligence, alleging that ACM's management of the CDO was grossly negligent and caused plaintiff harm.  ACM moved to dismiss the First Amended Complaint in its entirety, which this Court granted by Orders dated July 8 and September 14, 2011.  Plaintiff appealed, and on August 6, 2012, the Second Circuit found <u>inter alia</u> that "Bayerische has plausibly alleged that [ACM]'s gross negligence exposed Bayerische to greater risk that it would lose its entire investment than would have otherwise been the case," and remanded for further proceedings.  <u>Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC</u>, 692 F.3d 42, 65 (2d Cir. 2012) ("<u>Bayerische</u>").

Following a conference with this Court, a Pretrial Scheduling Order was issued on September 28, 2012, which set a deadline of October 12, 2012 for the joinder of parties and amendment of the pleadings ("September 28 Order").  On October 12, the parties stipulated to a revised First Amended Complaint, which removed a named plaintiff but continued to assert two claims of breach of contract and gross negligence against ACM alone.

Plaintiff received ACM's initial disclosures under Rule 26(a) on May 25, 2011.  The disclosures in relevant part identified seven individuals as likely to have discoverable information, and characterized each one as either an "ACM

Employee" or "Former ACM Employee."[2]  At least three of these individuals -- MacDonald, Marshman, and Morris -- had attended a meeting at plaintiff's New York offices in October 2006, at which they presented marketing materials to solicit plaintiff's investment in the CDO and provided the plaintiff with ACM business cards bearing their names.

In ACM's November 13, 2012 responses to plaintiff's first set of interrogatories ("Responses"), ACM identified ten individuals who were "employed by an affiliate or otherwise related entity of ACM" or were "employees of ACH" during the relevant time period and "had significant involvement in structuring, offering, marketing, operating and/or managing the Aladdin CDO."  Listed among these ten names were the seven individuals previously identified as present or former "ACM Employee[s]" in ACM's initial disclosures.  Plaintiff sought clarification of the apparent inconsistency via letter dated November 15.  In an email to plaintiff of November 19, ACM confirmed that the ten individuals listed in the Responses "are or were technically employees of ACH," and explained that it had previously referred to these individuals as ACM employees in its initial disclosures "because they acted on behalf of ACM with respect to the subject matter for which they [were] listed

---

[2] These individuals are: Scott MacDonald ("MacDonald"), Alexander Avtsin, George Marshman ("Marshman"), Jason Morris ("Morris"), Rohit Sethi, Darin Feldman, and Yi Zhao.

therein."[3]  This was the first notice that ACM provided to the plaintiff that the individuals with which it met in October 2006 were ACH employees and not ACM employees.

At all times relevant to this action, ACH was the parent company and sole member of defendant ACM.  Fact and expert discovery are set to conclude on June 28, 2013 and October 4, 2013, respectively.

Discussion

Without conceding that ACM is not a proper defendant, the plaintiff now moves to add ACH as an additional defendant as to its gross negligence claim.  Plaintiff's motion to amend was made pursuant to Rule 15(a)(2), Fed. R. Civ. P., which provides that a court "should freely give leave [to amend] when justice so requires."  But in a case where a scheduling order has been entered, as here, the lenient standard of Rule 15(a) is replaced by the Rule 16(b) standard, which prohibits amendment except upon a showing of "good cause."  Fed. R. Civ. P. 16(b)(4).  Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed."  Parker v. Columbia Pictures Indus.,

---

[3] This subject matter included information regarding: "the underlying portfolio of assets . . . referenced in [the CDO]," "ACM's management of the Reference Portfolio," "the structuring and sale of the Notes to the Initial Purchasers," "research analytics relating to the management of the Reference Portfolio," and "quantitative analytics relating to the Reference Portfolio."

204 F.3d 326, 340 (2d Cir. 2000) (citation omitted).  Therefore, a finding of good cause "turns on the diligence of the moving party."  Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted).

While the deadline for amendment of pleadings set forth in the September 28 Order has passed, the plaintiff has demonstrated "good cause" for its application to amend.  Bayerische discovered on November 13, 2012 that individuals who had "significant involvement" in marketing and managing the CDO were, in fact, employees of ACH during the relevant time period.  Plaintiff wrote to ACM immediately to clarify the apparent inconsistency with ACM's initial disclosures.  When ACM responded on November 19, plaintiff filed its motion to amend shortly thereafter, on December 4.  Notably, any assertion that plaintiff should have known prior to receiving the Responses that any individuals involved in managing the CDO were employed by ACH or that ACH was otherwise involved in the CDO is conspicuously absent from the defendant's opposition to this motion.  Plaintiff has therefore shown that it was sufficiently diligent in its pursuit of the proposed additional defendant to constitute "good cause" for amending its pleading at this stage.  There is also no evidence of bad faith or dilatory motive on the part of Bayerische, and there is no indication of undue prejudice to ACM, particularly given that discovery is ongoing.

Plaintiff's proposed amendment also would not be futile. A court may deny a motion to amend on grounds of futility. Foman v. Davis, 371 U.S. 178, 182 (1962); Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012). An amendment is futile if it fails to state a claim on which relief may be granted or is subject to motion to dismiss on another basis, such as the statute of limitations. Id.; Mackensworth v. S.S. American Merchant, 28 F.3d 246, 251 (2d Cir. 1994). The defendant contends that the proposed amendment adding ACH as a defendant would be futile because (1) the Second Amended Complaint fails to state a claim as to ACH, and (2) the proposed amendment does not relate back and is thus time-barred. Both arguments fail.

A plaintiff states a claim for gross negligence if it "alleges facts plausibly suggesting that the defendant's conduct evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." Bayerische, 692 F.3d at 61 (citation omitted). Recklessness in the context of a gross negligence claim means "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 454 (2d Cir. 2009) (citation omitted). Gross negligence claims "require only a 'short and plain statement of the claim,' so long as the facts alleged and any reasonable inferences that

can be drawn in [plaintiff's] favor give rise to a plausible claim for relief."  Bayerische, 692 F.3d at 64; Rule 8(a), Fed. R. Civ. P.

In Bayerische, the Second Circuit held that the First Amended Complaint sufficiently alleged a claim of gross negligence to survive dismissal.  It found that several of Bayerische's allegations as to ACM's management of the CDO "smack of intentional wrongdoing," including claims that the defendant "added Reference Entities to the Reference Portfolio at spreads that were substantially below the then-prevailing market spreads" and "failed to adjust the subordination levels" to reflect appropriate levels of risk.  Id. at 62 (citation omitted).  It also found that this conduct plausibly evidenced "an extreme departure from the standard of ordinary care" and appeared to be "contrary to how defendant explicitly represented it would manage the portfolio on behalf of [Bayerische and other] Noteholders."  Id. at 62-63.

In the Second Amended Complaint, plaintiff alleges that ACH is liable for gross negligence based on its direct involvement in this very same conduct.  Bayerische claims that ACH "held itself out as, and acted as, Defendant ACM with regard to all of Defendant ACM's portfolio management duties," that "employees of Defendant ACH performed all of the duties that Defendant ACM undertook as portfolio manager," and that as a result, "ACH owed

the same duty of care to Plaintiff that Defendant ACM owed."  It alleges that ACH made representations to plaintiff at a "meeting among employees of Defendant ACH" that ACM's and ACH's interests were aligned with plaintiff's interests.  Plaintiff also alleges that ACM and ACH made investment decisions in managing the CDO that negligently exposed plaintiff's investment to inappropriate levels of risk, including by "fail[ing] to ensure that the adjustments to the levels of subordination for the different tranches were accurate," and by trading at levels "substantially below the then-prevailing market spreads."

Particularly in light of Bayerische, this conduct plausibly alleges an "extreme departure" from the ordinary standard of care that is sufficient to sustain a claim for gross negligence as to ACH at this stage.  While the defendant contends that plaintiff's amended pleading is defective because ACM is the sole legal entity that performed the acts at issue and because Bayerische improperly disregards ACM's corporate form by claiming that ACH carried out any of the challenged conduct, these arguments are best-suited for a determination on the merits.  Bayerische has pleaded that ACH is directly liable for the gross negligence of its own employees as they performed ACM's duties as portfolio manager.  Bayerische is not proceeding on a theory that disregards the corporate form.  Thus, the Second Amended Complaint sufficiently pleads a claim for gross negligence

against ACH.

Moreover, the three-year statute of limitations does not prohibit an amendment adding ACH as a defendant at this stage because the proposed Second Amended Complaint relates back to the original complaint.[4]  "If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."  VKK Corp. v. National Football League, 244 F.3d 114, 128 (2d Cir. 2001).  Under Rule 15(c), an amended complaint that adds a new defendant relates back to the date of the original pleading if (1) the claims arise out of the same conduct or occurrences set forth in the original pleading; (2) within the time provided by Rule 4(m) -- 120 days -- the new party has received notice of the action such that it will not be prejudiced in its defense; and (3) the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Rule 15(c)(1)(C)(ii), Fed. R. Civ. P.; see Rule 4(m), Fed. R. Civ. P.; VKK Corp., 244 F.3d at 128; Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35 (2d Cir. 1996).

---

[4] Claims of gross negligence must be brought within three years of accrual.  Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n, 731 F.2d 112, 122 (2d Cir. 1984).  Under the Second Amended Complaint, it appears that Bayerische's gross negligence claims accrued in November 2007 and "early 2008" when plaintiff alleges that ACH and ACM made certain investment decisions giving rise to its gross negligence claim.

10

There is no dispute that the proposed Second Amended Complaint arises out of the same events alleged in the plaintiff's original and First Amended complaints.  Therefore, if the amendment is intended to correct a mistake, and the proposed defendant had notice within the statutory time period, the amendment is permitted.  Both conditions are met here.

### A.   Mistake

A plaintiff makes a "mistake concerning the proper party's identity" within the meaning of Rule 15(c)(1)(C) when it "harbor[s] a misunderstanding about [the prospective defendant's] status or role in the events giving rise to the claim at issue, and . . . mistakenly choose[s] to sue a different defendant based on that misimpression."  <u>Krupski v. Costa Crociere S. p. A.</u>, 130 S.Ct. 2485, 2494 (2010).  The fact "[t]hat a plaintiff knows of a party's existence does not preclude [it] from making a mistake" under Rule 15(c).  <u>Id</u>.  Indeed,

> a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the conduct, transaction, or occurrence giving rise to [its] claim.  If the plaintiff sues party B instead of party A under these circumstances, [plaintiff] has made a mistake concerning the proper party's identity notwithstanding [its] knowledge of the existence of both parties.

<u>Id</u>. (citation omitted).

Such are the circumstances here.  Although Bayerische was aware that ACH served as ACM's parent and sole member at the time of filing its original complaint, it only discovered that ACH

11

employees had "significant involvement" in inter alia structuring, operating, and managing the CDO upon receipt of defendant's Responses in November 2012.  Without the knowledge that ACH or ACH employees had played a role in the CDO's portfolio management, Bayerische misunderstood ACH's potential liability as to its gross negligence claim, and thus made a "mistake" within the meaning of Rule 15(c).  Id.; see, e.g., Abdell v. City of New York, 759 F.Supp.2d 450, 457 (S.D.N.Y. 2010).

The defendant contends that Bayerische did not make a mistake in identifying ACH as the proper defendant because the plaintiff continues to sue ACM in the Second Amended Complaint.  There is no requirement, however, that an amendment must replace a party in order to establish a mistake warranting relation back.  Amendments adding new defendants may relate back if the requirements described above are met.  See, e.g., VKK Corp., 244 F.3d at 128; Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996).  The key here is that the plaintiff failed to include ACH in its original complaint because it did not know that it needed to name ACH at the time of filing.  See Ish Yerushalayim v. United States, 374 F.3d 89, 91-92 (2d Cir. 2004) ("Had [plaintiff] not known that he needed to name individual defendants and thus failed to do so, that would presumably constitute a 'mistake.'"); Soto, 80 F.3d at 37.  That Bayerische continues to name ACM as a

defendant does not demonstrate the absence of a mistake in misunderstanding the role that ACH also played in the underlying conduct.  See Krupski, 130 S.Ct at 2494 (such a "deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.").

    B.    Notice

Having concluded that any error in initially identifying the proper parties in this case was the result of a mistake, it is necessary to determine whether ACH had notice of this action within the time provided under Rule 4(m) and "knew or should have known" that it was also a proper party to the lawsuit.  The focus of this inquiry is "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant," id. at 2496 (emphasis added), and not what the plaintiff knew or should have known at the time of filing.  Id. at 2493.

The defendant does not dispute that ACH received notice of the action.  In fact, counsel for Bayerische sent ACH's General Counsel at the time, Sharad Samy, a copy of the original complaint and ACH posted a notice describing the case on its website.

ACH also should have known that, but for Bayerische's misunderstanding of ACH's role in managing the CDO, ACH would have been sued for gross negligence along with ACM.  The original

complaint makes clear that Bayerische intended to sue for gross negligence those responsible for making the allegedly negligent management decisions that caused the total loss of its principal investment in the CDO. As laid out in the original complaint, plaintiff's gross negligence claim is grounded in the defendant's conduct in "perform[ing] its duties . . . as portfolio manager for the [CDO]" as it "had represented that it would," not in the defendant's status as a signatory to the PMA. It impugns the defendant for its "actions and omissions" in "select[ing] and manag[ing]" the Reference Portfolio, including making a series of allegedly negligent trading decisions that it claims "abandoned the management approach it had described to Plaintiff prior to issuance." It also specifically mentions a meeting at which "representatives of [the] Defendant" marketed the CDO to Bayerische.

ACM does not dispute that ACH employees made representations to plaintiff as to how the CDO would be managed or that ACH employees were "significantly" involved in "operating and/or managing the . . . CDO." ACH thus should have known, within the Rule 4(m) period, that it was not initially named as a defendant only because of Bayerische's misunderstanding about ACH's role in marketing and managing the CDO -- a "mistake concerning the proper party's identity," a mistake which ACM fostered in serving the misleading initial disclosures.

ACM principally contends that ACH was entitled to believe that the plaintiff made a deliberate choice to sue ACM -- and not ACH -- because Bayerische knew that ACH was ACM's parent company at the time of filing and nonetheless failed in its original complaint to refer to ACH, ACM's "parent," or the "employer"/"employee" relationship between ACH and the individuals involved in the challenged conduct.  This argument is unavailing, for two reasons.  First, as discussed above, the proper inquiry is not what Bayerische knew but rather what ACH reasonably should have understood from plaintiff's initial filings.  Krupski, 130 S.Ct at 2496.  Even if Bayerische was aware that ACH was ACM's parent and sole member, that fact "does not foreclose the possibility that [plaintiff] nonetheless misunderstood crucial facts regarding the two companies' identities" and that ACH should have known that it was omitted from the initial filings as a result of that misunderstanding.  Id. at 2497.

Second, the fact that plaintiff failed to mention ACH by name or refer to a "parent" or "employer" in its original complaint does not prove that Bayerische made a deliberate or informed decision not to sue ACH in the first instance.  Instead, given that ACM held itself out to be the sole entity involved in CDO management decisions, that ACH employees presented ACM business cards to the plaintiff at a meeting about the CDO, and

15

that ACM characterized ACH employees as present or former "ACM Employee[s]" in its initial disclosures, the most logical explanation for plaintiff omitting terms such as "ACH," "parent," "employer," or "employee" from its original or subsequent pleadings is that Bayerische misunderstood that any entity other than ACM had played a role in the portfolio management decisions giving rise to its gross negligence claim.

Bayerische brought negligence claims against ACM in its original complaint because of the investment decisions ACM made while managing the CDO. The record now indicates that ACM and ACH knew that ACH employees helped make those decisions. ACH may not escape suit on these same claims solely because Bayerische was ignorant of crucial facts about its role in the direct management of the CDO. See Krupski, 130 S.Ct at 2494, 2497. The requirements for relation back of the amendment having been met, the plaintiff's motion to amend is granted.

CONCLUSION

Plaintiff's December 4, 2012 motion to amend is granted.


SO ORDERED:

Dated:   New York, New York
         March 19, 2013

                                    _____
                                         DENISE COTE
                                    United States District Judge